Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RAFAEL HACKETT,** | |
| Plaintiff, | Civil Action No. 23-23181 (ES) (AME) |
| v. | OPINION |
| **UNITED STATES DEPARTMENT OF JUSTICE,** *et al.*, | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

Before the Court is defendants United States Department of Justice ("USDOJ") and John Jupin's ("Jupin") motion to dismiss (D.E. No. 21 ("Motion" or "Mot.")) *pro se* plaintiff Rafael Hackett's ("Plaintiff") Complaint (D.E. No. 1 ("Complaint" or "Compl.")). Plaintiff filed an opposition (D.E. No. 25 ("Opp. Br.")), and USDOJ and Jupin filed a reply (D.E. No. 26 ("Reply Br.")). Subsequently, defendant Carmen Miranda ("Miranda," and together with USDOJ and Jupin, "Defendants") filed a notice of joinder to USDOJ and Jupin's Motion.[1] (D.E. No. 35). Having considered the parties' submissions, the Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendants' Motion (D.E. No. 21) is **GRANTED**.

---

[1] Plaintiff also named Barry Bush ("Bush") as a defendant in the Complaint (*see* Compl.), but he is not part of the instant Motion (*see* Mot.).

1

I.  **BACKGROUND**

   A.  **Factual Background**[2]

Plaintiff is an individual who resides in Kearny, New Jersey.[3] (Compl. ¶ 1). USDOJ is a federal agency of the United States. (*Id.* ¶ 2). Jupin is either a current or former USDOJ agent and employee. (*Id.* ¶ 4). Bush is a former USDOJ agent and employee. (*Id.* ¶ 3). Miranda is the alleged mother of Plaintiff's child and formerly worked as a mental health therapist at the Rutgers University Newark campus. (*Id.* ¶¶ 5 & 54). Plaintiff does not know where any of the individual defendants reside. (*Id.* ¶¶ 3–5). "John Does 1 to 999" are presently unknown USDOJ agents or employees who "harass[ed], invade[d] the privacy of, or otherwise injure[d]" Plaintiff as described in the Complaint. (*Id.* ¶ 6).

Plaintiff alleges that for more than three decades, USDOJ through its agents and employees, has unlawfully "followed, tracked, visibly surveilled, and harassed [him] without probable cause or justification" and has retaliated against him, and continues to retaliate against him, for refusing to cooperate with USDOJ. (*Id.* ¶ 12). According to Plaintiff, this all began when he was on summer break in New Jersey from Syracuse University in or around June 1988, when he "became a popular subject in a well-known psychic astrologers' newspaper column" and was contacted by USDOJ to submit to an interrogation. (*Id.* ¶¶ 13–16). Plaintiff refused to cooperate, and subsequently "DOJ Newark" began to surveil him "on essentially a full[-]time basis." (*Id.* ¶ 17). Plaintiff alleges USDOJ made it easy for him to notice he was being surveilled to try and put pressure on him to cooperate. (*Id.* ¶ 18).

---

[2]  The factual background is taken from the allegations in the Complaint. For purposes of the instant Motion, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[3]  However, the Court notes the address listed for Plaintiff on the docket and on Plaintiff's filings is in Council, North Carolina, not New Jersey. (*See* Compl.; Opp. Br. at 7).

USDOJ continued surveilling Plaintiff when he returned to school in Syracuse, New York, including DOJ agents who patronized the restaurant there where Plaintiff worked part-time. (*Id.* ¶¶ 20 & 22). In or about October 1989, Plaintiff attended a party in Syracuse, and around the time of that party a person was killed in a nearby location. (*Id.* ¶ 26). Shortly thereafter, Plaintiff relocated to New Jersey where "he continued to be surveilled by Bush, Jupin, and some John Does." (*Id.* ¶¶ 28–29). In 1990, Plaintiff relocated to Fort Lauderdale, Florida, and "DOJ Newark continued to surveil him or cause him to be surveilled" and "stole [his] driver's license or caused it to be stolen" in Florida, but then later returned it to him "right before he left Florida, by leaving it on a countertop in his residence." (*Id.* ¶¶ 39–41). Plaintiff left Florida, briefly stayed in Washington, D.C., and then returned to New Jersey in 1991. (*Id.* ¶ 42). Between 1991 and 1995, Plaintiff "had numerous encounters where DOJ Newark continued to violate his privacy rights and cause him distress by making it obvious he was being surveilled." (*Id.* ¶ 44). Plaintiff relocated to Washington, D.C. in 1995 and then later returned to New Jersey in March 2000. (*Id.* ¶ 45).

In or around March 2000, shortly after Plaintiff returned to New Jersey, "DOJ Newark contacted him formally for the first time." (*Id.* ¶ 46). Specifically, Jupin called Plaintiff offering to help him with any "problems" and asking Plaintiff to "come down to the DOJ Newark office for an 'examination.'" (*Id.* ¶¶ 47–48). This was the first of approximately twelve calls that Jupin made to Plaintiff over a two-year period. (*Id.* ¶ 48). In one of these conversations with Jupin, Plaintiff learned that USDOJ "had settled a complaint financially related to [Plaintiff] years earlier, involving an old associate of [Plaintiff], but [Jupin] would not disclose any details." (*Id.* ¶ 52). In another of these conversations, Jupin asked Plaintiff who was giving him problems so that Jupin "could 'take care of' that person." (*Id.* ¶ 60). Jupin had apparently previously retaliated against "a doctor, three police officers, a police department, a towing company, a teacher, and other

3

individual[]" people and their businesses on Plaintiff's behalf without Plaintiff asking, including auditing and/or investigating them. (*Id.* ¶¶ 61–62). The second-to-last conversation between Plaintiff and Jupin occurred in 2002, during which Plaintiff "demanded information on the complaint that was settled on his behalf" but Jupin avoided the topic and instead asked what Plaintiff needed done; Jupin mentioned "that he had taken care of a pair of associates who had extorted [Plaintiff's] mother." (*Id.* ¶ 64). The next day, Plaintiff had his final conversation with Jupin who called Plaintiff at home and yelled at Plaintiff asking him who he told "about what happened in Syracuse[.]" (*Id.* ¶ 65). Plaintiff did not respond to the question, and that was the last conversation Plaintiff had with Jupin. (*Id.*). Plaintiff most recently saw Jupin in 2022, one block from his home. (*Id.* ¶ 68). Plaintiff is aware Jupin may have retired from USDOJ and "opened his own private investigation company." (*Id.* ¶ 69).

On or about October 29, 2023, Plaintiff filed a federal tort claim notice, which claim USDOJ denied. (*Id.* ¶ 11; *see also* D.E. No. 1-2 at 5). Plaintiff also alleges he requested his FBI file multiple times, but the requests were "returned as 'no record.'" (Compl. ¶¶ 49 & 67; *see also* D.E. No. 1-2 at 1–4). Plaintiff alleges Defendants engaged in a pattern or practice of illegally surveilling and harassing Plaintiff for years in retaliation for him not cooperating with USDOJ. (*See* Compl. ¶¶ 73–105). According to Plaintiff, USDOJ, through "its repeated and unjustified interference" with his life, "has stifled his progress as an American citizen since he reached adulthood." (*Id.* ¶ 51).

**B.     Procedural History**

On December 20, 2023, Plaintiff initiated this action by filing the Complaint against

4

defendants USDOJ, Jupin, Bush,[4] and Miranda, and fictitious defendants "John Does 1-999," and asserted four causes of action therein: (i) "Civil Rights Violation Under 42 U.S.C. §1981 and §1983; Invasion of Privacy, Harassment and Retaliation" (Count I); (ii) Intentional Infliction of Emotional Distress ("IIED") (Count II); (iii) Negligent Infliction of Emotional Distress ("NIED") (Count III); and (iv) Harassment in Violation of the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2(c) ("NJCRA") (Count IV).  (*See generally* Compl.).  Plaintiff seeks a judgment against Defendants, jointly and severally, including compensatory and punitive damages, litigation expenses, prejudgment interest, "[h]is FBI file," and such other and further relief as the Court may deem appropriate and equitable.  (*Id.* at 15).

On June 11, 2024, USDOJ and Jupin jointly filed a motion to dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Mot.; D.E. No. 21-1 ("Mov. Br.")).  On June 26, 2024, Plaintiff filed an opposition (Opp. Br.), and on July 8, 2024, USDOJ and Jupin jointly filed a reply (Reply Br.).  The Motion is fully briefed.

On March 10, 2025, the Honorable André M Espinosa, U.S.M.J., granted Defendants' unopposed request to stay discovery pending the Court's ruling on their Motion.  (D.E. No. 34). Accordingly, discovery in this matter is currently stayed.  On April 3, 2025, Miranda[5] filed a notice of joinder to USDOJ and Jupin's Motion.[6]  (D.E. No. 35).

---

[4]  However, Plaintiff alleges in his Complaint that he "is aware that Bush allegedly died in a friendly fire incident in or about 2007." (Compl. ¶ 71).  To the extent Bush is a deceased person, he is a not a proper party to this action, and Plaintiff cannot maintain an action against him.  *See infra* Section III.D.

[5]  Miranda is proceeding *pro se* in this action and has filed a few *pro se* letters on the docket stating, among other things, that she does not know Plaintiff, has never met Plaintiff, does not know any individuals by the name of Jupin or Bush, is not licensed as a therapist, and has never worked as a mental health therapist for Rutgers University. (*See* D.E. Nos. 15, 18 & 32).

[6]  Miranda's letter is dated March 25, 2025, but was received and docketed on April 3, 2025.  (*See* D.E. No. 35).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth a "short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" and "a demand for the relief sought, which may include relief in the alternative or different types of relief." The pleading standard announced by Rule 8 does not require detailed factual allegations; it does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). In addition, the plaintiff's short and plain statement of the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (alteration in original) (citation omitted).

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 570). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. (internal citation omitted).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Moreover, "[when] deciding a Rule 12(b)(6) motion, a court must

consider only the complaint, exhibits attached [thereto], matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (internal citation omitted). Furthermore, in ruling on the present Motion, the Court "must construe [Plaintiff's] complaint liberally because he is proceeding pro se." *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

### III. DISCUSSION

Defendants argue their Motion should be granted and Plaintiff's Complaint should be dismissed for the following reasons: (i) nearly all of Plaintiff's claims are time-barred by the applicable statute of limitations; (ii) Plaintiff fails to state a claim on which relief can be granted; (iii) Plaintiff's § 1981, § 1983, and NJCRA claims should be dismissed because Plaintiff sued federal actors, not state actors, and even if the Court considered Plaintiff's § 1981 and § 1983 claims as brought against Jupin pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), those claims must still be dismissed because no *Bivens* cause of action exists, and the Court should not extend *Bivens* to Plaintiff's claims; (iv) even if the Court found a *Bivens* cause of action existed, only one of Plaintiff's allegations is timely, and Jupin is entitled to qualified immunity on that allegation; and (v) Plaintiff's IIED and NIED claims should also be dismissed because while the Federal Tort Claims Act ("FTCA") waives sovereign immunity for torts against the United States, that is only if those torts are presented to the federal agency within two years after the claim accrues, and here, Plaintiff alleges only one timely allegation, which single alleged incident fails to set forth a claim upon which the Court could grant relief under the FTCA. (*See generally* Mov. Br.).

7

In opposition, Plaintiff argues his Complaint adequately alleges a continuous pattern of illegal surveillance extending over many years and sufficiently states a FTCA claim "against the DOJ defendants," but that if the Court does not find he sufficiently stated a claim, he should be granted leave to amend. (*See generally* Opp. Br.). Plaintiff makes a few other conclusory arguments but does not meaningfully oppose Defendants' Motion and the specific arguments made therein. (*See id.*).

### A.   Plaintiff's Alleged Section 1981 and Section 1983 Claims (Count I)

Plaintiff alleges Defendants violated his civil rights under Section 1981 and Section 1983 by unlawfully surveilling him over many years, invading his privacy, and harassing him, in retaliation for not cooperating with USDOJ. (*See* Compl. ¶¶ 73–92). Section 1981 "prohibits racial discrimination in the making and enforcement of contracts and property transactions[.]" *Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001) (citing 42 U.S.C. § 1981(a)). To state a claim under § 1981, a plaintiff must allege facts supporting "the following elements: (1) that plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated by the statute, which includes the right to make and enforce contracts." *Saunders v. Art Council of Princeton*, No. 21-1118, 2021 WL 6124315, at *2 (3d Cir. Dec. 28, 2021) (citation omitted).

Here, Plaintiff has not alleged his own race, that he is a member of a racial minority, or any facts supporting a racial discrimination and/or retaliation claim in violation of § 1981. (*See generally* Compl.). Additionally, Plaintiff has not alleged any conduct by Defendants from which the Court could construe Defendants were discriminating and/or retaliating against Plaintiff based on race. (*See id.*). Therefore, Plaintiff has failed to state a claim under § 1981, and accordingly that claim is **DISMISSED**.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Williams v. Patrick*, No. 18-9593, 2021 WL 5506922, at *3 (D.N.J. Nov. 24, 2021) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). "To be liable under § 1983, a defendant must have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *In re Sesay*, No. 22-0082, 2022 WL 1104062, at *11 (E.D. Pa. Apr. 12, 2022) (citing *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011)). In other words, "only state action can give rise to liability under § 1983[.]" *Lindke v. Freed*, 601 U.S. 187, 193 (2024). "Because Section 1983 provides a remedy for violations of federal law by persons acting pursuant to state law, 'federal agencies and officers are facially exempt from Section 1983 liability inasmuch as in the normal course of events they act pursuant to federal law.'" *Beale v. Dep't of Just.*, No. 06-2186, 2007 WL 327465, at *7 (D.N.J. Jan. 30, 2007) (quoting *Hindes v. F.D.I.C.*, 137 F.3d 148, 158 (3d Cir. 1998)). "This is because a federal agency is a not considered a 'person' subject to Section 1983 liability." *Id.* Additionally, "[a] § 1983 action cannot be maintained unless the underlying act violates a plaintiff's Constitutional rights." *Doe v. Se. Pa. Transp. Auth. (SEPTA)*, 72 F.3d 1133, 1137 (3d Cir. 1995).

Here, Plaintiff alleges USDOJ and its agents/employees—i.e., federal, not state, actors—unlawfully surveilled him on and off over many years. "Government agencies and departments are not 'persons' under § 1983[.]'" *Geraghty v. E. Bradford Twp.*, 584 F. Supp. 3d 10, 18 (E.D. Pa. 2022) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Thus, defendant USDOJ is not a "person" for purposes of § 1983 and therefore cannot be held liable under § 1983. *See McCrudden v. United States*, No. 14-3532, 2016 WL 1259965, at *3 (D.N.J. Mar. 31, 2016)

(dismissing with prejudice a § 1983 claim against "the United States, the DOJ, BOP, and FBI" because they "are not 'persons' under either § 1983 or *Bivens*"); *Beale*, 2007 WL 327465, at *7 ("Plaintiffs have named the DOJ, a federal agency, as the defendant who took the actions . . . that lead to [p]laintiffs' harm. Count IV then, must be dismissed as [p]laintiffs cannot establish a Section 1983 claim because DOJ is not a 'person' under Section 1983."). Additionally, any actions that Jupin or Bush may have taken in their capacity as agents or employees of USDOJ occurred as federal actors or under color of federal law, not state law, and thus may not serve as a basis for Plaintiff's § 1983 claims. *See Davis v. Samuels*, 962 F.3d 105, 115 (3d Cir. 2020) ("All of the defendants here, however, are alleged to be federal actors or to have acted under color of federal law, so the 1983 claim cannot stand.").

Further, Plaintiff does not specify which constitutional right(s) Defendants purportedly violated. Construing Plaintiff's allegations in the Complaint broadly, the allegations "regarding illegal surveillance and recording can be liberally construed as § 1983 claims for Fourth Amendment violations." *In re Sesay*, 2022 WL 1104062, at *11. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "To state a claim for an unreasonable search under the Fourth Amendment, plaintiffs must plead that a defendant 'invaded areas to which the public did not have access and in which there was a reasonable expectation of privacy (e.g., private offices, storage rooms, and residences).'" *Burke v. Bachert*, 702 F. Supp. 3d 347, 360 (E.D. Pa. 2023) (quoting *Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 825 F.3d 149, 168 (3d Cir. 2016)). "A claim for unreasonable seizure is stated when plaintiffs plead 'some meaningful interference with . . . [their] possessory interests in [their] property." *Id.* (alterations in original) (quoting *Stone v. Martin*, 720 F. App'x 132, 134 (3d Cir. 2017)).

Here, Plaintiff fails to plausibly allege a violation of his Fourth Amendment constitutional rights. In particular, Plaintiff has not plausibly alleged how Defendants invaded non-public areas where Plaintiff had a reasonable expectation of privacy and/or how Defendants meaningfully interfered with his possessory interests in his property. Therefore, Plaintiff fails to state a § 1983 claim, and accordingly that claim is **DISMISSED**.

Moreover, to the extent Plaintiff intended to assert a *Bivens* claim against Defendants, that claim also fails. "A *Bivens* action, which is the federal equivalent of the § 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law." *Brown*, 250 F.3d at 800 (citing *Alexander v. Pa. Dep't of Banking*, No. 93-5510, 1994 WL 144305, at *3 (E.D. Pa. Apr. 21, 1994)). However, Plaintiff cannot maintain a *Bivens* action against a federal agency such as USDOJ. *See Dambach v. United States*, 211 F. App'x 105, 107 (3d Cir. 2006) ("A *Bivens* action is not available against the United States or one of its agencies."); *Keys v. U.S. Dep't of Just.*, 285 F. App'x 841, 842 (3d Cir. 2008) ("[Plaintiff] cannot maintain a *Bivens* action against the United States Department of Justice, a federal agency" (citing *FDIC v. Meyer*, 510 U.S. 471, 485–86 (1994))). Thus, Plaintiff fails to state, and cannot state, a *Bivens* claim against USDOJ.

To the extent Plaintiff is attempting to assert a *Bivens* claim against Jupin and/or Bush, that claim also fails. "*Bivens* claims are generally limited" and "[f]urther extensions of *Bivens* are disfavored." *Ibuado v. Fed. Prison Atwater*, No. 22-00651, 2022 WL 22834156, at *4 (E.D. Cal. Aug. 17, 2022). For example, *Bivens* has not been extended to harassment or invasion of privacy claims. *See id.* (noting "*Bivens* has not been extended to invasion of privacy"); *Kidd v. Warden Williamsburg Fed. Corr. Inst.*, No. 23-1326, 2023 WL 4998578, at *4 (D.S.C. Apr. 28, 2023), *report and recommendation adopted*, 2023 WL 4397397 (D.S.C. July 7, 2023) (citing *Ball v.*

11

*Streeval*, No. 20-0558, 2023 WL 1930003, at *6 (W.D. Va. Feb. 9, 2023) (collecting cases recognizing that claims of excessive force, harassment and threats by officers, sexual harassment, and sexual assault all presented new *Bivens* contexts to which *Bivens* should not be extended)). Thus, and for the additional reasons articulated in Defendants' Motion, the Court declines at this time to extend *Bivens* to Plaintiff's allegations of invasion of privacy, harassment, and retaliation against Jupin and Bush.

Therefore, the Court finds Plaintiff fails to state a claim under either § 1981 or § 1983, and accordingly those claims in Count I of the Complaint are **DISMISSED**, and with respect to defendant USDOJ, Plaintiff's § 1983 claim is **DISMISSED** *with prejudice*.

### B.     Plaintiff's Alleged NJCRA Claim (Count IV)

Plaintiff also alleges Defendants engaged in harassment in violation of the NJCRA. (*See* Compl. ¶¶ 102–05). "Courts [in] this district have consistently interpreted § 1983 and the NJCRA analogously." *Simmer v. Kehler*, No. 15-2285, 2015 WL 6737017, at *2 (D.N.J. Nov. 2, 2015) (citing *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011) (collecting cases)). "Accordingly, the claims under § 1983 and the NJCRA will be analyzed together, and must rise or fall together." *Id.* Therefore, for the same reasons Plaintiff's § 1983 claim fails, Plaintiff's NJCRA claim in Count IV of the Complaint likewise fails and accordingly is **DISMISSED**.

### C.     Plaintiff's Alleged State Law Tort Claims (Counts II & III)

Plaintiff also alleges violations of the state law torts IIED and NIED. (*See* Compl. ¶¶ 93–101). Both IIED and NIED claims are subject to a two-year statute of limitations under New Jersey law. *See* N.J. Stat. Ann. § 2A:14-2(a); *Campanello v. Port Auth. of N.Y. & N.J.*, 590 F. Supp. 2d 694, 699 (D.N.J. 2008) (stating IIED and NIED claims are subject to a two-year statute of limitations (citations omitted)); *Fakla v. Geist*, No. 22-4126, 2024 WL 3634191, at *9 (D.N.J.

Aug. 2, 2024) (same); *see also Jones v. Fox Rothschild LLP*, No. 20-6312, 2020 WL 6156774, at *3 (D.N.J. Oct. 21, 2020) ("Under New Jersey law, claims for intentional torts including . . . IIED are subject to a two-year statute of limitations." (citing N.J. Stat. Ann. § 2A:14-2(a)).

Similarly, the FTCA, 28 U.S.C. §§ 2671–2680, provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues[.]" 28 U.S.C. § 2401(b). With respect to defendant USDOJ, state law tort claims are only actionable against it pursuant to the FTCA. *See Ryan v. United States*, No. 24-1464, 2024 WL 3717496, at *1 (3d Cir. Aug. 8, 2024) ("[A] tort claim against a federal agency must be brought under the Federal Tort Claims Act ('FTCA'), 28 U.S.C. §§ 1346, 2671 *et seq.*"); *Dambach*, 211 F. App'x at 107 ("State law provides the source of substantive liability under the FTCA."); *cf. Vanderklok v. United States*, 868 F.3d 189, 201 (3d Cir. 2017) ("If the United States is sued in tort, or once the United States substitutes itself as a defendant in a tort case, the FTCA provides the exclusive avenue to relief, if any can be had.").

The FTCA "allows a plaintiff to bring certain state-law tort suits against the Federal Government." *Brownback v. King*, 592 U.S. 209, 210 (2021) (citing 28 U.S.C. §§ 2674 & 1346(b)). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Martinez v. U.S. Post Off.*, 875 F. Supp. 1067, 1071 (D.N.J. 1995) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). The FTCA operates as a limited and conditional waiver of the United States' sovereign immunity and must be strictly construed in favor of the sovereign. *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010). "Because the FTCA waives the immunity of the United States, time bars with respect to the filing of claims under the FTCA are strictly construed, and constitute an unwaivable jurisdictional requirement." *Simms v. United States*, No. 89-0165, 1990 WL 4416, at

13

\*1 (E.D. Pa. Jan. 19, 1990), *aff'd*, 914 F.2d 244 (3d Cir. 1990) (citation omitted).

Here, Plaintiff alleges he filed an administrative federal tort claim notice on October 29, 2023.  (Compl. ¶ 11; *see also* D.E. No. 1-2 at 5).  Accordingly, absent some applicable exception not apparent to the Court, all of Plaintiff's claims based on allegations that occurred prior to October 29, 2021, are time-barred under the applicable two-year statute of limitations.  The Court agrees with Defendants that most of Plaintiff's claims are time-barred because they stem from allegations of conduct that occurred prior to October 29, 2021.  Indeed, Plaintiff has failed to show how his claims dating back to 1988 are not time-barred.  (*See generally* Opp. Br.).

Plaintiff's allegation that he saw "Jupin as recently as 2022, one block from his home" (Compl. ¶ 68) is the only fact in the Complaint that occurred within the applicable statute of limitations.  As Defendants state, this barebones allegation does not allege any element of a tort (NIED, IIED, or otherwise), much less a complete tort.  (Mov. Br. at 13; *see also id.* at 28–31).  Plaintiff does not refute this argument in his opposition brief.  (*See* Opp. Br.).  Further, putting aside the timeliness of Plaintiff's claims, Plaintiff fails to otherwise plausibly allege a claim for IIED or NIED against Defendants in his Complaint.  As Defendants note in their Motion, and for the reasons stated therein, the continuing tort doctrine[7] does not save Plaintiffs' untimely claims because, even considering the allegations of conduct that occurred prior to October 29, 2021, Plaintiff fails to plausibly state a tort claim against any of the defendants.  (*See* Mov. Br. at 12–13

---

[7]  "The continuing tort doctrine is an established doctrine in New Jersey and other states." *Russo Farms, Inc. v. Vineland Bd. of Educ.*, 675 A.2d 1077, 1084 (N.J. 1996).  Under this doctrine, "although the initial tortious act may have occurred longer than the statutory period prior to the filing of an action, an action will not be barred if it can be based upon the continuance of that tort within that period." *Haddonbrook Assocs. v. Gen. Elec. Co.*, 427 F. App'x 99, 101 (3d Cir. 2011) (quoting *Thorndike v. Thorndike*, 154 N.H. 443, 910 A.2d 1224, 1227 (2006) (internal quotation marks omitted)).  The New Jersey Supreme Court explained that this doctrine is "best understood in the context" of nuisance claims." *Id.* (citing *Russo Farms, Inc.*, 675 A.2d at 1084).  "[A] continuing tort must 'contain[] every element of a tort, including a new breach of duty.'"  *Id.* (alteration in original) (quoting at *Russo Farms, Inc.*, 675 A.2d at 1087).  "[T]he *Russo Farms* court was explicit that 'new injury' must result from 'a new breach of duty.'" *Id.* (quoting at *Russo Farms, Inc.*, 675 A.2d at 1091).

& n.7; *see also* Compl.).

To state a claim for NIED, a plaintiff must generally allege either (i) that "the defendant's negligent conduct placed the plaintiff in 'reasonable fear of immediate personal injury' which gave rise to emotional distress that resulted in a substantial bodily injury or sickness" or (ii) "that the defendant's negligence caused the death of or serious injury to someone with whom the plaintiff shared a marital or intimate, familial relationship and the plaintiff had a sensory and contemporaneous observation of the scene and suffered severe emotional distress as a result." *Angle v. United States*, No. 12-2495, 2012 WL 6708165, at *6 (D.N.J. Dec. 21, 2012) (quoting *Jablonowska v. Suther*, 948 A.2d 610 (N.J. 2008)). "In order to establish a claim for negligent infliction of emotional distress under New Jersey law, 'a plaintiff must prove that defendant's conduct was negligent and proximately caused plaintiff's injuries.'" *Veggian v. Camden Bd. of Educ.*, 600 F. Supp. 2d 615, 629 (D.N.J. 2009) (quoting *Williamson v. Waldman*, 696 A.2d 14, 17 (1997)). "Determining defendant's negligence 'depends on whether defendant owed a duty of care to the plaintiff, which is analyzed in terms of foreseeability.'" *Id.* (quoting *Williamson*, 696 A.2d at 17). To state a claim for IIED, "the plaintiff must establish intentional and outrageous conduct by defendant, proximate cause, and distress that is severe." *Rodriguez v. Ready Pac Produce*, No. 13-4634, 2014 WL 1875261, at *6 (D.N.J. May 9, 2014) (quoting *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (1988)). "Further, the conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Buckley*, 544 A.2d at 863). Here, Plaintiff has not plausibly alleged a claim for either NIED or IIED. For example, Plaintiff does not allege a breach of any duty of care Defendants purportedly owed to Plaintiff, nor does Plaintiff allege conduct "so outrageous in character, and so extreme in degree, as to go beyond

15

all possible bounds of decency." (*See generally* Compl.).

Thus, the Court finds Plaintiff fails to state a claim for IIED or NIED, and accordingly those claims in Counts II and III of the Complaint are also **DISMISSED**, and to the extent Plaintiff's claims are based on allegations of conduct that occurred prior to October 29, 2021, those claims are **DISMISSED** *with prejudice* as time-barred under the applicable two-year statute of limitations.

### D. Plaintiff's Alleged Claims Against Bush

With respect to defendant Bush, Plaintiff alleges he is aware that Bush "allegedly died" in an incident in or around 2007. (*See* Compl. ¶ 71). Counsel for Defendants contends that even though they do not currently represent Bush, the Court should dismiss all claims against Bush because he is a deceased individual and thus not a proper party to this action. (Mov. Br. at 1 n.2, 8–11). Defendants request the Court to take judicial notice of Bush's death—specifically, the multiple news sources, including the FBI's website, confirming Bush's death in April 2007. (*Id.* at 8–9 & n.5). Defendants assert that because Bush is a deceased individual, he is not a proper party to this action. (*Id.* at 8–10). Defendants further note that Plaintiff's claims against Bush should also be dismissed because Bush, as a deceased person, has not been—and cannot be— properly served in this action. (*Id.* at 10–11). Additionally, Defendants state that even if the Court found that Bush is a properly named defendant and disregarded any service issues, any arguments made as to them would also apply equally to Bush. (*Id.*). Plaintiff does not refute any of Defendants' arguments related to Bush in his opposition brief. (*See generally* Opp. Br.).

The Court agrees with Defendants that Bush, a deceased individual, is not a proper party to this action, and thus Plaintiff cannot maintain an action against him. *See In re Proton-Pump Inhibitor Prods. Liab. Litig.*, No. 17-2789, 2022 WL 17850260, at *2 (D.N.J. Dec. 22, 2022)

(noting "a person who is deceased does not have legal existence"); *Bank of Nova Scotia v. Dean*, No. 2011-64, 2016 WL 1242536, at *2 (D.V.I. Mar. 28, 2016) ("A complaint against a dead person is a nullity."); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 311 F.R.D. 152, 156 (E.D. Pa. 2015) ("The Court finds that since the deceased [p]laintiffs had no legal existence when their complaints were filed, their suits are nullities with no legal effect." (citing cases)); *cf. Anderson v. Yungkau*, 153 F.2d 685, 686 (6th Cir. 1946), *aff'd*, 329 U.S. 482 (1947) ("If a party dies and the claim is not thereby extinguished, the court within 2 years after the death may order substitution of the proper parties. If substitution is not so made, the action shall be dismissed as to the deceased party." (quoting Fed. R. Civ. P. 25(a)(1))). Additionally, as Defendants note, Bush as a deceased individual has not been, and cannot be, properly served in this action.

Therefore, all of Plaintiff's claims against Bush in the Complaint are *sua sponte* **DISMISSED** *without prejudice*.

### E. Plaintiff's Alleged Claims Against Miranda

With respect to defendant Miranda, Plaintiff alleges that after developing insomnia and anxiety, he "sought therapy at health services on the Rutgers University Newark campus" where he "was assigned Miranda, a therapist, and had two sessions with her," but that USDOJ prevented him from continuing therapy with her "by causing termination of her employment." (*See* Compl. ¶¶ 33–35). Plaintiff also alleges that at some point after he returned to New Jersey in or around 2000, Miranda called him and "claimed that she had given birth to [his] child through in vitro fertilization," and that she had followed him "several times while he was grocery shopping." (*Id.* ¶¶ 53–55). Plaintiff further alleges that after a few more conversations with Miranda, "she was unwilling to meet with him, and was unwilling to let him meet his alleged child[,] so he stopped communicating with her." (*Id.* ¶ 57).

The Court finds these few bare-bones allegations, even construed liberally, fail to state any claim against Miranda, and accordingly all of Plaintiff's claims against Miranda in the Complaint are similarly **DISMISSED** *without prejudice*.

## IV. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss is **GRANTED**, and accordingly Plaintiff's Complaint is **DISMISSED** in its entirety. An appropriate Order follows.

**Dated: June 5, 2025**                                   *s/ Esther Salas*
                                                          **Esther Salas, U.S.D.J.**